# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DALONNO JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 5923 |
| v. | ) |
| | ) Judge George M. Marovich |
| | ) |
| CSX TRANSPORTATION, and UNITED | ) |
| TRANSPORTATION UNION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dalonno Johnson ("Johnson") filed an amended complaint against defendants CSX Transportation and United Transportation Union. Defendant CSX Transportation ("CSX") moves for summary judgment. For the reasons set forth below, the Court grants the motion for summary judgment.

## I.  Background

Unless otherwise noted, the following facts are undisputed.

Defendant CSX is in the business of transporting freight across state lines by railroad. As such, it is a carrier under the Railway Labor Act. CSX employs, among others, conductors/switchmen, who are represented by the United Transportation Union (the "Union"). The Union and CSX are parties to a collective bargaining agreement. Article 46 of the collective bargaining agreement provides, in relevant part:

> (b)    Yardmen or switchtenders continued in the service or not censured pending an investigation of an alleged offense shall be notified, within five days after the Company has information of the offense, that a charge is pending. Within five days thereafter an investigation shall be held, if demanded and a

>   decision shall be rendered and made effective within three days after the investigation.
>           (c)     Yardmen or switchtenders taken out of service or censured for cause shall be notified by the Company of the reason therefor, and shall be given a hearing within five days, after being taken out of service, if demanded, and if held longer shall be paid for all time so held at their regular rates of pay. Yardmen or switchtenders shall have the right to be present, and to have counsel of their choosing, at hearings and investigations to hear all oral [sic] and to read all written testimony, and to bring out any facts in connection with the case. They shall also have the right to bring such witnesses as they may desire to give testimony, and may appeal to a higher officer of the Company in case the decision is unsatisfactory. Such decision shall be made known in writing within three days after the hearing or yardman or switchtender will be paid for all time lost after expiration of the three days. Stenographic report will be taken of all hearings or shall be furnished with a copy of same. In case the suspension, dismissal or censure is found to be unjust, yardmen or switchtenders shall be reinstated and paid for all time lost.

(CBA, Article 46). The Union and CSX agreed to submit their disputes under the collective bargaining agreement to the Public Law Board.

CSX has promulgated operating rules. Operating Rule 500 states, among other things, "Employees must report for duty at the designated time and place. Without permission from their immediate supervisor employees must not: 1. Absent themselves from duty, or 2. Arrange for a substitute to perform their duties." CSX's Absenteeism Policy suggests possible discipline for absenteeism. It states, in relevant part:

>   We recommend, if the employee is found guilty of excessive absenteeism, the following action should be taken:
>   * First investigation–discipline assessed–2 days overhead for 6 months.
>   * Second investigation–discipline assessed–5 days actual suspension.
>   * Third investigation–discipline assessed–up to dismissal.

Plaintiff Johnson worked for CSX as a conductor/switchman from about November 20, 1998 until June 2004. During that time, CSX disciplined Johnson a few times. At least twice, CSX disciplined Johnson for absenteeism. For example, on May 1, 1999, CSX gave Johnson a "formal coaching" for excessive absences, and on March 20, 2000, CSX gave Johnson a "formal

counseling" for being off of work without permission. He was also disciplined on two occasions for "failing to protect an assignment" and twice for "missing a call."

The events that lead to this lawsuit occurred in 2004. Johnson was absent from work six times, including February 6, February 13, February 24, February 25, March 16 and March 26. According to documents Johnson later supplied to CSX, Johnson was treated by a dentist on February 13 for an abscessed tooth. The tooth fractured and prevented him from working on February 24 and 25. Johnson had a post-surgical appointment on March 16. He visited a different doctor on March 26 because he had not felt well.

On April 1, 2004, six days after Johnson's last absence, CSX sent Johnson a letter that directed him to attend an investigation on April 8, 2004. The letter explained that the purpose of the hearing was to determine the facts and place responsibility for the excessive absenteeism during the period of January 31-March 30, 2004. At the same time, CSX placed Johnson on paid administrative leave for two days. After that, his administrative leave (which seems to have continued until his discharge on June 6, 2004) was unpaid.

The investigative hearing did not take place until June 4, 2004. That is because the Union requested (and CSX granted) four extensions. At the hearing, Johnson was not represented. He objected and noted that he was entitled to representation under Article 46 of the collective bargaining agreement. Still, Johnson testified on his own behalf and presented paperwork documenting the medical reasons for his absences. Matthew Begue ("Begue"), the Superintendent of the terminal where Johnson worked, testified on behalf of CSX at the investigation hearing. Begue stated that CSX considered it excessive absenteeism when an

employee missed six days during a 60-day period. He testified that Johnson had not provided any documentation to support his absences until the day of the hearing.

On June 6, 2004, Begue sent Johnson a letter stating that Johnson was dismissed. CSX had concluded that Johnson was at fault with respect to his absences during the 60-day period.

The Union disagreed with the decision. The Union appealed the decision to R.D. Meadows ("Meadows"), CSX's Director of Claims Administration. In October 2004, Meadows denied the appeal. The Union and CSX held a conference in December 2004 but failed to reach an agreement with respect to Johnson's appeal. Finally, CSX and the Union agreed to submit the dispute to binding arbitration before the Public Law Board (the "Board").

The Board conducted its hearing in Jacksonville, Florida on April 26, 2005. The Board consisted of three members: F.J. Doyle ("Doyle"), CSX's Director of Labor Relations; J.L. Mateer ("Mateer"), the Union's Vice General Chairperson; and F.T. Lynch ("Lynch"), the neutral selected by CSX and the Union to serve as the permanent Chairman and Neutral Member of the Public Law Board. Despite the distance, Johnson attended the hearing in Jacksonville. Although the Union and CSX submitted written briefs before the hearing, they presented no evidence at the hearing.

On August 30, 2005, Lynch issued the Board's decision. It stated, among other things:

The record reveals that under date of April 1, 2004, claimant was notified to report for investigation on April 8, 2004. On April 5, 2004, at the request of the Local Chairman, it was agreed to postpone the investigation until April 20, 2004. The investigation, at claimant's request, was thereafter postponed to May 7, 2004, then to May 14, 2004, and finally until June 4, 2004. A further request from claimant to postpone the investigation until August 1, 2004 was denied.

It is the opinion of this Board that during the period of time from April 1, 2004 until June 4, 2004, claimant had ample opportunity to secure representation at the investigation. His failure to select a person or persons to represent him during the

> investigation must be viewed as his personal responsibility. When Carrier ultimately decided to hold the investigation on June 4, 2004, the Board finds it was within Carrier's rights to do so. The Organization's argument that claimant was denied a fair and impartial investigation cannot be upheld.
>
> \* \* \*
>
> The charge against claimant was 'excessive absenteeism' during the period from January 31, 2004 through March 30, 2004. During that period of time claimant laid off 'sick' on six separate occasions.
>
> \* \* \*
>
> In this particular case, claimant was off for 6 days in the 60 day period involved. While claimant offered certain statements from his doctor and/or dentist attesting to treatment received, it has long been held in this industry that absences from service due to sickness can be counted when making a determination of excessive absenteeism.
>
> \* \* \*
>
> Based on the record in its entirety, it is the finding of this Board that Carrier has presented sufficient evidence to justify its decision that claimant was guilty of the discharge against him.
>
> Inasmuch as Carrier has followed the procedures set forth in its discipline policy, the Board is not inclined to attempt to interfere with Carrier's final decision to dismiss claimant from service.

## II. **Standard on a motion for summary judgment**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a

verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

In his claim against CSX, Johnson asks the Court to review the arbitration decision rendered by the Public Law Board. A "Public Law Board is 'an optional dispute-resolution mechanism' created under the Railway Labor Act." *Mitchell v. Union Pacific RR*, Case No. 05 C 2193, 2005 WL 1189599 at *3 (N.D. Ill. May 16, 2005) (quoting *Steffens v. Brotherhood of Ry.*, 797 F.2d 442, 447 (7th Cir. 1986)). Decisions of the Public Law Board "shall be final and binding on both parties." 45 U.S.C. § 153 First (m).

The RLA provides a federal court jurisdiction to hear certain appeals from decisions of the National Railroad Adjustment Board. The RLA provides:

> If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court . . . a petition for review of the division's order. . . . The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). Like decisions of the National Railroad Adjustment Board, decisions of a Public Law Board may be challenged under 45 U.S.C. § 153 First (m). *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Railway Co.*, 768 F.2d 914, 921 (7th

Cir. 1985); *United Trans. Union v. Indiana Harbor Belt RR Co.*, 540 F.2d 861, 863-864 (7th Cir. 1976).

This Court's review of the decision of the Public Law Board is "among the narrowest known to the law." *Steffens v. Brotherhood of Ry, Airline and Steamship Clerks*, 797 F.2d 442, 447 (7th Cir. 1986); *Wilson v. Chicago and North Western Trans. Co.*, 728 F.2d 963, 966 (7th Cir. 1984). Still, a district court may "set aside an award in whole or in part or remand the matter to the board for further action on the following grounds: (1) failure of the board to comply with the requirements of the Railway Labor Act; (2) failure of the board to confine itself to matters within its jurisdiction; or (3) fraud or corruption by a member of the board making the award." *Wilson*, 728 F.2d at 966. A Public Law Board's jurisdiction "is limited exclusively to the interpretation or application of existing agreements." *Wilson*, 728 F.2d at 967. Thus, to be within the Public Law Board's jurisdiction, the decision must get its essence from the collective bargaining agreement. *Lyons v. Norfolk & Western Railway Co.*, 163 F.3d 466, 469 (7th Cir. 1999). If the Public Law Board interpreted the contract, its ruling stands. *Lyons*, 163 F.3d at 470.

A party can "complain if the arbitrators don't interpret the contract . . . [or] if they disregard the contract." *Lyons*, 163 F.3d at 469. In *Wilson*, for example, the Seventh Circuit affirmed a district court's decision to set aside the decision of a Public Law Board where the Public Law Board had departed from clear language in a collective bargaining agreement. *Wilson*, 728 F.2d at 967-968. In that case, the collective bargaining agreement set out a 15-day time limit for the employer's rendering of disciplinary decisions. It also provided that if the decision were not rendered within 15 days, "the charges against the employee shall be

considered as having been dismissed." The Public Law Board proceeded to approve discipline against an employee, despite the fact that the employer had not rendered its disciplinary decision within 15 days. The Seventh Circuit explained:

> The Board attempted to alter the existing agreement by ignoring the provisions mandating the dismissal of charges when the railroad fails to comply with the specified 30-day, 10-day, and 15-day time limits recited therein. The Board clearly exceeded the boundaries of its authority in so acting, and the district court properly overturned the awards pursuant to 45 U.S.C. § 153 First (q).

*Wilson*, 728 F.2d at 967. The *Wilson* court also concluded that by altering a provision of the collective bargaining agreement, the Public Law Board violated the Railway Labor Act. Thus, the Seventh Circuit concluded that the Public Law Board's decision must be rejected both because it exceeded its jurisdiction and because it violated the RLA.

In this case, Johnson challenges the decision of the Public Law Board on three grounds. First, he argues that the Board ignored the collective bargaining agreement by failing to enforce the agreement's 5-day notice requirement. Specifically, the collective bargaining agreement provides that employees will be notified of the charge "within five days after the Company has information of the offense." Johnson notes that his last absence was March 26, 2004, and that his notice was provided April 1, 2004, six days after his last absence.

The Court does not agree that the Public Law Board exceeded its jurisdiction with respect to the five-day requirement. To begin with, it appears that the Board made a factual determination in favor of CSX. The Board noted that the charged violation was six absences during a particular period of time (January 31, 2004 to March 30, 2004) and that the notice was issued within five days of the end of that period of time. Such factual determinations are within the jurisdiction of the Board. In any event, this case is distinguishable from *Wilson*, where the

-8-

collective bargaining agreement explicitly stated that if the employer violated the time limits, the charge was to be deemed dismissed. The collective bargaining agreement in this case did not set out the consequences for failure to comply. Accordingly, the Court cannot conclude that the Board exceeded its jurisdiction with respect to the five-day limit.

Johnson's second argument is that the Board exceeded its jurisdiction by ignoring language in the collective bargaining agreement that allowed Johnson to have "counsel of [his] own choosing" at the hearing. In its decision, the Board noted,

> His failure to select a person or persons to represent him during the investigation must be viewed as his personal responsibility. When Carrier ultimately decided to hold the investigation on June 4, 2004, the Board finds it was within Carrier's rights to do so.

Although the collective bargaining agreement says that an employee is entitled to have counsel of his choosing present at the hearing, it does not say that the employee is entitled to have the hearing postponed while he finds counsel. Court concludes that the Board did not exceed its jurisdiction when it decided that an employee's right to have counsel of his choosing present at the hearing did not extend to having the hearing postponed indefinitely.

Johnson's third argument is that the Public Law Board exceeded its jurisdiction by approving discipline that exceeded the discipline outlined in the Absenteeism Policy. Johnson correctly points out that the Absenteeism Policy lists suggested discipline for first-offense absenteeism as "2 days overhead for 6 months" and for second-offense absenteeism as "5 days actual suspension." The problem with Johnson's argument, however, is that it points to no portion of the collective bargaining agreement that incorporates the Absenteeism Policy. Accordingly, there can be no claim that the Board exceeded its jurisdiction by ignoring a provision in the collective bargaining agreement. *See Lyons*, 163 F.3d at 470.

For these reasons, the Court concludes that there are no genuine issues of material fact and that CSX is entitled to judgment as a matter of law.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court grants defendant CSX Transportation's motion for summary judgment.

ENTER:

*[signature: George M. Marovich]*

George M. Marovich
United States District Judge

DATED: August 7, 2007